May it please the court. Ms. Stepp suffers from severe pain associated with degenerative disc disease throughout her entire spine. The commissioner's adjudicator denied her claim on the basis that she experienced considerable improvement during the period at issue. Now Ms. Stepp submitted evidence showing that she continued to suffer from severe pain after two invasive spinal surgeries. Her treating physician concluded she still couldn't work one year after her alleged onset date and a few months later that physician increased her dosage of pain medication. The commissioner's adjudicator saw all of this evidence. She erred by discounting the opinions of the claimant's treating physician and disregarding her allegations on the basis that she experienced some improvement. But the commissioner's adjudicator did not see all the relevant evidence. In fact Stepp submitted evidence the day of the ALJ's unfavorable decision showing that she continued to suffer from severe pain. She underwent additional spinal injections in hopes of relieving that pain, had additional diagnostic studies performed, and was ultimately planning to undergo another spinal surgery in hopes of relieving spinal cord impingement in her cervical spine. Contrary to the commissioner's claim, this court has jurisdiction to review her final decision regarding Stepp's claim that this evidence supports changing the ALJ's intent to review the Appeals Council order for one reason or another. It should consider such evidence when reviewing the ALJ's decision under sentence 4 or when considering whether to remand under sentence 6 of the United States Code 42 section 405 G. Although the ALJ did not see all the relevant evidence, the evidence she did see provides ample support for Stepp's claim to disability benefits. For example, in 2009 after her first spinal surgery her treating surgeon said that she would not be able to work for five months. After she experienced worsening in late 2009 and additional studies showed why she was having pain, Dr. Ritter concluded in January of 2010 that she still couldn't work. Months later in July of 2010 another treating physician, Dr. McCormick and later Dr. Taylor, concluded that she had severe pain related limitations in concentration, sitting, standing, and walking, but didn't know how long those limitations would last. In November of 2010 another treating physician, Dr. Durrell, concluded that because of persistent pain Stepp still couldn't work, and in February of 2011 that doctor had to increase her dosage of pain medication in hopes of controlling her symptoms. The ALJ improperly disregarded the corresponding opinions of three treating physicians. She never even mentioned the supportive statements of Dr. Ritter that claim it's treating orthopedic surgeon. Now the Commissioner contends that the ALJ had no duty to discuss Dr. Ritter's statements because they were reserved to the Commissioner and these temporary restrictions were later withdrawn, but those of those rationales appear nowhere in the ALJ's decision. As such, the Chenery Doctrine precludes their invocation before this court. Ritter's talking after the surgery, right? After her first surgery he says that she would need to be off work for five months. Right. And then she has a worsening in November of 2009 which corresponds with her alleged onset date. Yeah, but I get that, but I don't see why most people right after back surgery aren't ready to go back to work immediately. So why is that probative? It seems to me it's perfectly obvious why the ALJ wouldn't engage. What's more important is that Dr. Ritter observed in early 2010 that the claimant had hit a wall with conservative treatment regarding the pathologies that the MRIs in late 2009 showed were still affecting her. Therefore, he decided to conduct another surgery in 2010. Dr. Ritter's statements were temporary, but the Commissioner's ignoring how his statements were carried on by other treating physicians that indicated she couldn't work in July of 2010 and in November of 2010. Why would Dr. Durrell, for example, say that she could not work in November of 2010 if she had experienced considerable improvement from her first back, her second back surgery in March of 2010? And why would he increase her dosage of pain medication in February of 2011 if she was already getting adequate relief of her symptoms? The ALJ failed to provide a good reason for discounting Dr. McCormick's opinion. The Commissioner overlooks how well-supported Dr. McCormick's opinion is, including her consistent it is with two other opinions offered by treating physicians. Now the Commissioner contends that the ALJ reasonably relied on the claimant's improvement, but the ALJ failed to build a logical and accurate bridge between the relevant evidence and his conclusion that the claimant's improvement undermines Dr. McCormick's opinion. For example, the ALJ ignored how in April of 2010 the consultative examiner observed that the claimant was in mild distress due to her pain. While she cited the fact that the claimant was no longer taking oxycodone, she ignored how the claimant reported to Dr. McCormick in July of 2010 that she couldn't concentrate because of pain. The ALJ ignored how in August of 2010 she was admitted to an intractable pain unit and was in a wheelchair because she could not walk due to pain. The ALJ overlooked or minimized how in November of 2010 she reported to Dr. Durrell pain throughout her entire spine, which worsened with sitting and standing. And he ignored how in February of 2011 she reported persistent pain and indicated she can't sit, stand, or walk for more than 10 minutes at a time. All of these reports are consistent with Dr. McCormick's opinion. The ALJ also ignored evidence from June of 2011 where the claimant reported pain and indicated that her left hand is always numb. The examiner documented diminished sensation and strength and ordered an electromyography which showed chronic nerve damage involving her cervical spine and affecting the muscles of her upper extremities. Did a doctor find functional limitations as a result of the hand manipulative problems? No doctor specifically commented on the manipulative limitations, but the claimant testified that she had such limitations. And the ALJ never discussed it. The ALJ... I thought that was addressed at step 2. Maybe I'm getting that mixed up. The ALJ discussed her allegations regarding carpal tunnel syndrome, but the ALJ reflected a fundamental misunderstanding of her medical condition. The claimant was experiencing neurological damage in her cervical spine that was affecting the nerve roots and causing what's called cervical radiculopathy in her upper extremities. And that's what's on the EMG, a short for electromyography that was conducted in June of 2011. The ALJ didn't discuss how that supported her allegations of profound manipulative limitations and the Commissioner has conceded this. Now the Commissioner contends this error is harmless because one of the jobs the ALJ cited at step 5 could be performed without ever using your hands, but there's only 400 jobs in this entire state of Indiana and this does not qualify as a substantial number of jobs what the adjudicator is required to cite at step 5. So the Commissioner's post hoc rationales simply demonstrate that the ALJ failed to build a logical bridge between the relevant evidence and her conclusion that the claimant is not disabled. Now the Commissioner cannot deny that steps new in material evidence contradicts the ALJ's determination that she experienced substantial improvement. Indeed, in the months after her administrative hearing, she presented with reports of persistent pain, underwent additional injections and diagnostic studies, and ultimately planned to have another cervical, another surgery on her cervical spine. To be sure, the claimant would not undergo all this additional medical treatment if she had obtained substantial improvement with her prior treatments. Now... Mr. Browder, did the, has she received the benefits after the ALJ denial? Yes, Your Honor. Is she getting them? After the appeals counsel denies a request for review, she is allowed to refile a claim for benefits and that claim, I may be wrong here, but I think that claim has been denied and is pending before the agency. Okay, thank you. With regards to the new and material evidence, the Commissioner has told this court it has no evidence, but the Commissioner's position is untenable and it would render meaningless rights with both the agency and Congress has conferred upon this step. The Social Security Administration's new and material regulation exists for the sole purpose of providing claimants in misstep shoes one last chance to prove her disability before the ALJ's decision becomes final. Congress has given her the right to judicial review of agency determinations and the right to reconsideration of her claim based on new and material evidence. If this court were not to find that she doesn't have a remedy, other claimants in step shoes would be left without a solution. The Commissioner's boilerplate method of denying requests for reviews has created this problem. This court has long expressed concern about the unreviewable nature of those denials. The Commissioner argues that this court has no jurisdiction to review the Appeals Council order, but this argument is based on authority from this court that was rendered before the court changed a fundamental principle of law. The court now holds that any administrative claim presented and finally decided is subject to judicial review, whether or not the agency thinks live testimony necessary. The appellant is not insisting that the Appeals Council to conduct a full review. She's merely asking the court to review the Commissioner's final decision that new and material evidence doesn't warrant changing the ALJ's decision. In sum, remand is warranted because steps new and material evidence contradicts the ALJ's primary rationale for denying her claim and the Appeals Council's perfunctory finding to the contrary is supported by substantial evidence. Thank you Mr. Browder. Mr. Javita Dilley. May it please the court, Javita Dilley on behalf of the Commissioner. Your name is Javita Dilley. For the reasons expressed in our brief, it is our view that neither the substance of arguments that appellant raises against the ALJ's decision nor the arguments that appellant makes regarding the post decision evidence merit remand. Why don't you focus on the latter? On the latter. Well first, Your Honor. Because that gives me some concern. There seems to be minimal or no reference as to Dr. McKay, which and his testimony it seems is contraindicated with regard to the question of improvement. I mean first I guess I'll focus on what I'll refer to as the Farrell issue. Opposing counsel in the reply brief in the first instance cited this court's decision in Bolli and took the view that Bolli was a sea change. That Bolli would support the argument that this court should change its jurisprudence on the issue whether it should require the Appeals Council to give a substantive decision on the issue of sort of newly submitted evidence. But I think if you look universally across the board at the circuits, they do not require the Appeals Council to speak on this issue. They universally acknowledge that the Appeals Council generally is terse in these matters, but this court has held sort of throughout, I think from Nelson through Eades through Perkins through Farrell, that where the court can satisfy itself on the issue whether the Appeals Council found the considered it under 970B and found it not to be against the weight of the ALJ's decision not to be against the weight of the record including the new evidence, that that decision is discretionary and unreviewable. There's no reason why the agency couldn't organize its or set forth the right to submit evidence to the agency in this way. Certainly a more draconian right which would say, for example, you can only submit whatever evidence you get before the ALJ and we're not going to consider new evidence. If you want new evidence to be considered, you have to avail yourself of reopening or filing of a new claim wouldn't be impermissible. The court has acknowledged that this is sort of a certiorari type jurisdiction and so long as the court can satisfy itself that the and then determined that it wasn't that the ALJ's decision wasn't against the weight of the evidence including that evidence, it should find the Appeals Council's order to be discretionary and unreviewable and in light of Eades should not consider that evidence when evaluating the validity of the ALJ's decision. Moreover, because the Appeals Council considered the evidence and for the other reasons given in our argument, the court should not consider the Sentence 6 Remand. First, there's the issue that the it's no longer new because it was presented to the Appeals Council. More importantly, as reflected in our brief, opposing counsel gave an incomplete argument on the issue of Sentence 6 Remand. If you look at the Supreme Court's decision in Melkonen, which I believe was written in the 90s, they specifically take a look at the legislative history underpinning Sentence 6. In the regime running up to the amendment, I think in 1979, that set forth Sentence 6 of 405G, courts were sending cases back sort of for basically when they didn't like the ALJ's decision and thought new evidence merited remand and the Supreme Court made clear in Melkonen that the legislative history showed that Congress really wanted to rein that in. They wanted plaintiffs and here appellants who wanted to make a Sentence 6 argument to set forth clear reasons why they didn't present, a good cause essentially, why they didn't present the evidence earlier. And here the vast majority of the evidence was in existence between four and six weeks, in its entirety in existence between four and six weeks before the ALJ's decision. There's no evidence that counsel who represented claimant before the agency, well counsel didn't, but counsel's firm did, ever apprised the ALJ that more evidence would be forthcoming and it was, you know, didn't say anything at the ALJ hearing. Four to six weeks is a pretty short time period for Social Security Administration appeals, right? I mean, I suppose, Your Honor, but some of it was in existence before the ALJ hearing. Some of it was created in July and August and, I mean, maybe that's a short period, but at the same time making no argument whatsoever, right, giving no justification, no, making no argument with respect to cause, I feel it gives this court sort of incomplete argument on the issue. And having failed to plead cause, I don't think that, certainly with respect to the evidence that was created after the ALJ issued the decision, that's new. That's new evidence. It's not material in this case because the appeals counsel reasonably found that it didn't bear on the period and issue and it didn't say anything regarding, if you take a look at the evidence, it's not material because it doesn't speak to the period before the I invite the court to take a look at the language of Melkonen. Without... I was looking for that. It's not in the brief. How do you spell that? I believe it's M-E-L-K-Y-O-N-E-N, something like that. I can't remember the exact spelling, but I believe it was issued in the 90s. Against. I don't remember, but I assume it's the agency. Commissioner? Okay, thanks. Turning back to the Farrell issue, I think that, as reflected in our brief, the appeals counsel order in this case bears indicia that distinguish this case from the court's decision in Farrell. In Farrell, what the court said was, look, we need to be sure that the appeals counsel considered this evidence to be qualifying, new material and time relevant. In the absence of indicia that will permit us to find that, to sort of assure ourselves of that, we're going to assume that they didn't. And we can review the narrow issue, whether the appeals counsel found the evidence to be qualifying and considered it. And so the court remanded on that basis and said, you know, you need to take a look at this. You need to apprise us of, you know, whether you've considered it and tell us that you've decided that, in spite of this evidence, the decision is not against the weight of the evidence. Here, both the Halleck's provision that we cited, 1, 3, 5, 20, which sets forth what the appeals counsel should do with the new evidence based on whether it thinks it to be qualifying or non-qualifying, is pretty strong evidence of what the appeals counsel thought. But even just reading the order, right, using the interpretation principle of ex partio unius, it says specifically what it finds to be non-time relevant, which, you know, leads one to believe is sort of evidence of the fact that the appeals counsel found the remainder of the evidence to be time relevant, right? They have the set of evidence, two pieces of the evidence, the two items that were issued the decision in November of 2011, are found explicitly to be not time relevant in the text of the order, which is consistent with the Halleck's provision. And, you know, the natural inference is that the remainder was found to be relevant. Moreover, the order uses the expressed language at step two of the process outlined in 970B, the regulation governing the submission of evidence to the appeals counsel, that it uses the specific language not against the weight of the evidence. That's a step in the process that the appeals counsel would reach only if it had first considered, it first viewed the evidence, deemed it to be qualifying, that is new material and time relevant, entered it into the record, and then reached step two of that process. Our view is that in light of those two things, and this wasn't sort of, to be honest, well presented in Farrell, this wasn't something with which we've had, we had to grapple at that time, we believe that that sort of gives the court sufficient indicia to distinguish the order in this case from the order in Farrell. I would be happy also to turn to the substance of the merits. First, I would like to claim it in this case, Appellant has twice since applied for benefits. She applied for benefits after the appeals counsel order went final with an alleged onset date of the date immediately afterwards. Lost, was denied benefits, it went up to the appeals counsel level and was not appealed to federal court. It went final, I believe in September of 2014, and then applied again, that one is pending before the agency, I think at the ALJ level, for the period immediately following that ALJ decision, which I think was at some point in 2013, I can't remember the exact date. At some point her age is gonna kick in with the grids, right? Yes, if, so once she's 50 years old, if she's found to be capable only of sedentary work as she was found in this case, then she would grid. One thing that I would like to bring to the court's attention, in support of his argument, one of the things that counsel sort of cited is the ALJ's, or Dr. Durell's opinion, right? The treating pain management specialist who without opining on Clemens' functional limitations, Appellant's functional limitations, that she should remain off work in November of 2010, the ALJ discounted Dr. Durell's opinion and Appellant made no argument about that. Our view would be that that argument is waived, and then with respect to Dr. McCormick's July 2010 opinion, our view is that the ALJ reasonably discounted it. There's no question that the record supports the view that Appellant, throughout, experienced pain. The question is whether she experienced pain so severe that she could not work in spite of it. And when you look at Dr. McCormick's opinion, it's really difficult, A, to believe it extended any further than August 2nd, a week after it was issued. But more importantly, the ALJ's reason, the reason the ALJ provided, if supported, is a good one. That she expected improvement, and that if you look at the ALJ's decision, viewed it harmoniously with, you know, commonsensically with that conclusion, the ALJ thought the record supported the view that she did improve. Dr. McCormick said that she was basing the opinion on the fact that Appellant expressed 8 of 10 pain, right? She cited 8 of 10 pain. And when you look at the evidence at the end of 2010, with physical therapy, occupational therapy, she's expressing, at the end of 2010, pain more on the order of 3 out of 10, 3.5 out of 10, 4 out of 10. Then in the fall, an occupational therapy note notes that she's having, she requires assistance sitting, standing, or walking. But by the beginning of, by the end of 2010, beginning of 2011, with the use of a TENS unit, which one can use to some degree at work, she's independently functional, and has increased, I think by the end of 2010, her ability to sit, stand, or walk to 30 minutes at a time each. Maybe one of them is 40 minutes, I don't remember exactly, but I think those are at transcript 779 and 774. I think certainly there's conflicting evidence, but if the ALJ reasonably viewed Dr. McCormick's opinion as flawed, or as discounted, the only word on the issue at that point was the state agency reviewers who said light work. The ALJ partially credited the appellant's complaints and concluded that sedentary work was more appropriate. That was consistent with the lifting requirement that Dr. McCormick imposed in her opinion. She said that claiming to lift 10 pounds occasionally and less than 10 pounds frequently, which is consistent with sedentary work. The ALJ just concluded that the appellant could stand or walk more than she alleged. And with respect to, I guess I'll speak briefly about Dr. Ritter's opinions. I'm sorry. I apologize. I apologize, Your Honors. Thank you so much for your time. I ask the court to affirm for the reasons presented are brief. All right. Thank you, Mr. Akele, Mr. Browder. First, I'd like to address the issue of improvement. Appellant doesn't deny that she improved some, but this court has long held that an ALJ is not entitled to cherry pick evidence of improvement without discussing ongoing struggle with severe symptoms. It's also held that there is often a great distance between someone who responds to treatment and someone who is able to return to work. The claimant's treatment notes bear that out. And although the commissioner insists that the ALJ concluded her pain just wasn't bad enough to keep her from working, three treating doctors disagreed over a period of at least a year. Getting back to the legal issues regarding the new and material evidence showing that she didn't improve substantially, first with the good costs issue, the claimant's administrative hearing was in August of 2011. She didn't know when a decision was going to be issued. It wasn't issued until November of 2011. Is that fast or slow? It's a little bit longer than average. I think the average is probably one to two months. I think the average is one to two months and the decision here was three months. There are outliers who take multiple months to issue a decision. But what the commissioner is essentially asking is that the claimant's attorney follow her to her doctor's appointments, get a printout of her treatment note, and submit it straight to the agency. Good cause shouldn't require that kind of burden. The claimant's attorney made a prompt request and submitted the evidence as soon as it was available, as soon as it was obtained. The district court noted that it was 13 days after the last treatment note. With regards to the agency's final decision regarding the new and material evidence, the commissioner still hasn't explained why this court can't review her final decision on that claim. We're not asking for an imposition of a duty to articulate. I thought the theory, maybe I've got this wrong, but I thought the theory was that if the appeals council denies review, then the ALJ's decision is the commissioner's final decision. That's what the regulations say. Right. But what we're arguing is that the claimant made an additional administrative claim that the appeals council made a final decision on. That claim was that new and material evidence warrants changing the ALJ's decision. Have any other circuits imposed a duty to explain the handling of such new evidence? Most of the other circuits are considering the appeals council order as part of the final decision so that the courts can review that evidence when evaluating the ALJ's decision. If the commissioner thinks this doesn't warrant changing the ALJ's decision, then why can't the court consider it when reviewing that final decision? She said it doesn't support changing the ALJ's decision. In light of that fact, this court should be able to consider it if it is not inclined to impose some sort of duty of articulation or enable courts to review the appeals council's perfunctory finding. With that, I'll yield. Thank you. All right. Thank you, Mr. Browder. Thanks to both counsel.